MUNICIPAL GAS COMPANY OF THE CITY OF ALBANY, Plaintiff, *v.* THE PUBLIC SERVICE COMMISSION, SECOND DISTRICT, CHARLES D. NEWTON, as Attorney-General of the State of New York, HAROLD ALEXANDER, as District Attorney of the County of Albany, and the CITY OF ALBANY, Defendants.

(Supreme Court, Albany Trial Term, August, 1920.)

*Constitutional law — statutory gas rates — Laws of 1907, chap. 227, § 2, relating to the candle power of gas to be furnished in the city of Albany, was repealed by Laws of 1907, chap. 557, and was not revived by the reenactment of that statute by Laws of 1909, chap. 25 (General Business Law, §§ 320–323) — power of public service commission to change standard for measuring gas from a candle power test to one of heating test. Public Service Commissions Law, § 66(3), as amended by Laws of 1913, chap. 504 — Laws of 1907, chap. 227, § 1, declared unconstitutional and as under the rate fixed therein the return to plaintiff failed to yield six per cent on its property during the year 1913, the statute held confiscatory.*

ACTION by plaintiff to have section 1 of chapter 227 of the Laws of 1907 declared unconstitutional in that it confiscates plaintiff's property.

Neile F. Towner, for plaintiff.

Arthur L. Andrews, corporation counsel, and John J. McManus, for defendant, the city of Albany.

Charles D. Newton, attorney-general (Wilber W. Chambers, deputy attorney-general), for defendant attorney-general.

OPINION.

NICHOLS, J.  This is an action brought by the plaintiff, a corporation engaged in the manufacture and distribution of gas in the city of Albany and adjacent territory, to have section 1 of chapter 227 of the Laws

of 1907, which fixes the maximum rate which may be charged for gas in the city of Albany at one dollar per 1,000 cubic feet, declared unconstitutional in that it confiscates plaintiff's property. Section 2 of said act provides as follows:

" Sec. 2. The illuminating gas furnished by any such corporation, association, copartnership or person shall have an illuminating power of not less than twenty-two sperm candles of six to a pound, burning at the rate of one hundred and twenty grains of spermaceti per hour tested at a distance of not less than one mile from the distributing holder by a burner consuming five cubic feet of gas per hour and each one hundred cubic feet of gas shall not contain more than five grains of ammonia nor more than twenty grains of sulphur nor more than a trace of sulphuretted hydrogen  *  *  *."

This statute became a law April 6, 1907. Subsequently, by chapter 557 of the Laws of 1907, which became a law June 27, 1907, in cities of the second class, of which the city of Albany is one, it was provided that the minimum illuminating power for carburetted water gas should be twenty candles. The plaintiff produced carburetted water gas. Section 5 of said act provides that all acts in so far as inconsistent with the provisions of this act are hereby repealed. Chapter 557 of the Laws of 1907 was re-enacted by chapter 25 of the Laws of 1909 and became article 20 of the General Business Law, constituting sections 320 to 323 thereof.

" It is also the law that a statute, applicable to a particular class of cases, is not repealed by implication by a general statute broad enough in terms to embrace the cases covered by the special law, unless an intent to work a repeal is manifest. Such an intent, however, must commonly be held to be manifest where the later statute is intended as a revision or codifica-

tion of earlier enactments." *Peterson* v. *Martino*, 210 N. Y. 418.

The re-enactment of the legislation on the subject did not revive chapter 227 of the Laws of 1907. Section 90 of the General Construction Law provides that the repeal of any provision of a statute which repeals any provision of a prior statute does not revive such prior provision. *People ex rel. Conine* v. *County of Steuben*, 41 Misc. Rep. 594; affd., 183 N. Y. 114.

The public service commission, by an order effective January 1, 1917, changed the standard for measuring gas from a candle power test to one of heating power. Under the provisions of subdivision 3, section 66 of the Public Service Commissions Law, as amended by section 2 of chapter 504 of the Laws of 1913, and which conferred on the commission the power to fix by order from time to time, standards for the measurement of the purity of gas, the illuminating power of gas and the heating power of gas, notwithstanding that any standard for the measurement thereof may have been fixed by statute. Before the enactment of 1913, subdivision 3 of section 66, chapter 429 of the Laws of 1907, gave the commission the power " to fix the standard of the illuminating power and purity of gas not less than that prescribed by law."

Said order of the public service commission, effective since January 1, 1917, prescribed a monthly average of 585 British thermal units per cubic foot and that it should not for more than three consecutive days in each month average five per cent below 585 British thermal units.

During the month of November, 1917, the monthly average of the daily British thermal unit test was for three days consecutively less than five per cent below 585 British thermal units. During the last five days of January, 1918, and the first eleven days of February, 1918, the plaintiff for more than three days consecutively fell below the 585 test. During these times oil

conditions were desperate. After February 14, 1918, the gas did not fall below the five per cent minimum set by the public service commission. If the commission became satisfied that its order was not being properly complied with, it could, under section 74 of the Public Service Commissions Law, have commenced an action against the plaintiff to have such violation stopped and prevented. And, therefore, the public service commission recognized the fact that under the circumstances of the case, the plaintiff had substantially complied with the provisions of its order, or, if it regarded the acts of the plaintiff as a violation of its order, by its conduct in not stopping or preventing such violations, the commission waived the requirements of its order.

The valuation of the property of a gas corporation is the value as of the time when the inquiry is being made regarding the reasonableness of the rates fixed by the statute, and the corporation should be given the benefit of any increase in the value of the property since it was acquired. *Willcox* v. *Consolidated Gas Company*, 212 U. S. 19, 41.

In 1911, pursuant to the terms of section 69 of the Public Service Commissions Law, plaintiff presented to said commission an application for the purpose of refunding certain obligations and to reimburse its treasury for moneys expended out of income for the acquisition of property, etc. To determine the propriety of granting the application, it was necessary for the plaintiff to have its books rewritten in accordance with the system of accounts prescribed by the public service commission.

The plaintiff, aside from producing and distributing gas, is also engaged in the business of producing and distributing electricity. The gas business is conducted in the city of Albany and in the city of Watervliet and some adjacent rural territory. In the division between the gas and electrical operations, the salaries of the gen-

eral officers and office help working upon both branches, fifty per cent of the expenses are allocated usually to each branch unless for some special reason which is disclosed by the evidence, a different percentage was proper; and as between the gas business in the city of Albany and outside of the city of Albany, eighty-eight per cent has been taken by the court as a proper allocation to the city of Albany and twelve per cent outside the city for all expenses which covered both the city and outside the city; this rate of allocation was adopted by the plaintiff and substantially adopted by the defendants.

For organization expenses of the gas company, at the suggestion of the court, the sum of $10,000 was adopted by both the plaintiff and the defendants.

The plaintiff claims an allowance of $205,000 for working capital. The plaintiff's balance sheet on December 31, 1918, showed materials and supplies on hand of $129,566.51, accounts receivable, $49,570.49; one-half of the cash on hand, $41,351.79, a total of $220,487.79. While Mr. Hine, defendants' expert, claims that $115,000 for working capital is ample, it seems to me that " working capital " means the money that must be used for carrying on the business of the corporation and is represented by its cash on hand and its inventories. The defendant, Attorney-General Newton, insists that this allowance is much too large, and, among other reasons, claims that the materials and supplies on hand include not only those used for operating expenses, but also for construction work and that it would be unfair to allow interest and taxes upon materials and supplies for new construction and at the same time include a return upon these items as a part of the working capital; an examination of the plaintiff's inventories of supplies of that date shows that they amounted to the sum of $32,143.85, so that if one-half is allowed for materials for operation and one-half for construction work, then plaintiff's work-

ing capital stands at substantially $205,000; and in connection with this I might state that the amount allocated to Albany is $180,400, which is a trifle less than ten per cent upon the entire gas operating capital as finally fixed and determined by the court.

As to the item of interest and taxes during construction, Mr. Hine testified that for that item he would add three per .cent of the operating capital which he fixed at $1,528,140; while the court has fixed the operating capital at $1,821,876. I have taken three per cent on Mr. Hine's figures, $45,844.

Upon the question of the land for manufacturing sites, I have made the following values: Site of plant, $165,000; Champlain street, $1,500; land south of the plant, $95,348; a total of $230,426.24, allocated to Albany only, this being the inventory values carried by the corporation for these properties without the Grand street holder property and the Watervliet office property. The land south of the plant is the only land near the plant that is available for large manufacturing operations. The plaintiff claims that it was purchased for the purpose of building an auxiliary coal gas plant; it produces no income; therefore, it could not have been bought for investment purposes. There is nothing in the record that would indicate that it was purchased for speculative purposes. It was the part of wisdom, if the coal gas auxiliary was to be built, to acquire this land before acquired by another manufacturing concern and the mere fact that some years have elapsed since the land was acquired without any construction of the coal gas auxiliary is not material owing to reasons which were set forth by plaintiff; and I believe that this plot of land is properly an item to be charged as gas operating capital. I have rejected the Grand street property as gas operating capital; on the day that I inspected the property, there was practically no gas in the holder and there was every indication that this holder had been practically abandoned

48

and I do not believe that it should be and have not allowed the same as gas operating capital. The experts value the land occupied by the Grand street holder from $7,000 to $8,000. Mr. Whitbeck, plaintiff's expert, values the Grand street holder at $42,480, the aggregate of which, land and holder, amount to about $50,000. This amount I have written off as not proper gas operating capital. The plaintiff formerly used the building at 112 State street for an office building and which was supplemented to some extent by a building on Grand street which was used by the electrical department for offices. The plaintiff subsequently constructed the office building at 124–126 State street, the land costing $71,551.50 and the building $369,810.75, a total of $441,362.25, one-half of which allocated to the gas business is $220,861.12; deducting from this one-half of the sum for which the rents to outside people capitalized at six per cent would produce a total of $180,000; one-half of which, $90,000, allocated to the gas business, leaves $130,681 for the gas business. Mr. Hine, the company's expert, stated that he would allow only $90,000 for the building, land and new furniture for the gas business. While the court does not allow the company two buildings, yet it seems to me that this new building with its attractive show rooms for the sale of gas appliances which increase the sales of gas and thereby decrease the overhead charges, was a good business venture on the part of the company and that the foregoing sums mentioned, together with the value of the new furniture which is set up elsewhere, is properly an item to be charged to gas operating capital. When the company moved into the new office building, January 1, 1918, it vacated the old office building and which has stood idle since, barring a small amount of rental received. While ordinarily the company should have a reasonable time in which to dispose of old, unused or obsolete property, yet it knew for several years

during the construction of the new office building at about what time it would cease to need the old building and should have made some disposition of the same; I have, therefore, disallowed the claim for any allowance of the same as gas operating capital; and, on the other hand, I have disallowed the contention of the defendants' expert, Mr. Maltbie, that because some witness had testified to valuations of $20,000 in excess of the amount at which the building was carried on the company's books he claiming said $20,000 was income from gas operations for the year 1918; in the first place the building had not been sold and a profit, if one could have been secured, had not been garnered; but even if a profit had been secured, it would not have been a profit for 1918 exclusively, but a profit spread over all the years since the acquirement of the property; and, even if allowed for the year 1918, there would still be a large deficit for that year as shown by the figures and tables hereinafter compiled and would not apply for the ensuing years after 1918 which are of equal import to the plaintiff corporation. The court has, therefore, disallowed this claim of the defendants. The court has allowed the item of the equipment of the new office building not included in the suspense account and chargeable to gas operations at $1,471; also new office furniture attributable to gas at $6,636, a total of $8,108.

Upon the question of the value of the works and station structures, I have adopted neither the book values nor the testimony of either the plaintiff's or defendants' experts, but make the same $133,403, less depreciation; for the value of the holders, I have made the same $204,318, less depreciation, and which is substantially the book values of the same after deducting the value of the Grand street holder; for furnaces, boilers and accessories, I have adopted the book values thereof after deducting the Grand street items; for water gas sets and accessories, purification

apparatus and accessory equipment at works, I have adopted the book values of the same, $140,069, before deducting depreciation; Mr. Hine's figures for these three items are $180,712, or $40,712 in excess of the court's valuation. The miscellaneous property does not seem to be listed by either the plaintiff's or the defendants' experts in their valuations. I have taken the valuation therefor from the evidence and make same $658. On gas tools and laboratory equipment, I have adopted the book value, which value was also adopted by Mr. Hine, defendants' expert. On trunk lines and mains in Albany city only, I have adopted the book value, as this book value includes all the items, whatever they may have been, for paving replacements in laying services and mains prior to 1912. I have not attempted to separate paving replacements in laying services, placing it all on the trunk lines and mains, whatever it may have been. On gas services, gas meters and gas meter installations, I have adopted the valuations of Mr. Hine, defendants' expert, for the reason that so far as gas services and gas meters are concerned, there is no great difference between the book costs and the figures of Mr. Hine, his valuation being about $12,000 under the book costs; but on the question of gas meter installation, while the book cost is placed at $22,132, the evidence shows that many thousand dollars of these items were entirely disregarded when the books were rewritten and the number of gas meter installations, 24,932, and the book costs, in my opinion, are inadequate and I have adopted Mr. Hine's valuations, Mr. Hine's figures being $9,107 in excess of the book costs of the same items.

As to the amount of the depreciation, the court frequently stated during the trial that in his opinion the depreciation charges set up by the plaintiff during the year 1918, to wit: $17,000 for annual depreciation, were adequate. However, for the general amortization charges, the plaintiff now claims $37,046, while

the defendants' expert, Mr. Maltbie, allows for the same, $30,100. Although it is to be noted that in separating the items of depreciation, Mr. Hine makes his figures $31,118, of this amount, all except the four items, trunk lines and mains, gas services, gas meters and gas meter installations, amount to $17,497, which are applicable to Albany only, the balance, $13,621, being applicable to the entire gas business and eighty-eight per cent of the latter amount applicable to Albany only is $11,986, making the total amount applicable to Albany only $29,483 instead of a total of $31,118 according to Mr. Hine's figures; and this does not include the $26 annual depreciation on the miscellaneous property not listed by Mr. Hine in his table. On trunk lines and mains, I have made the accrued depreciation $148,774. I feel that this sum is vastly in excess of any accrued depreciation on trunk lines and mains in the city of Albany only; the only depreciation that could be set up against this item would be for obsolescence and inadequacy and there has been no separate evidence upon these items from which the court could find the amount. Had the court adopted the annual depreciation claimed by the plaintiff at $37,046, the accrued depreciation upon that estimate would have been increased by twenty-five per cent upon all the items; and had the court adopted the amortization charges set up by the plaintiff corporation for 1918, to wit: $17,000, the accrued depreciation would have been nearly fifty per cent less. However, these charges substantially balance each other in the end for this reason: With a smaller annual depreciation, less money is required to produce the six per cent earnings upon the rate base, while the rate base is correspondingly increased; the larger the annual depreciation charges, the more the earnings required to produce the six per cent on the rate base while the rate base is correspondingly decreased. So that I think under all the circumstances substantial justice

will be produced by adopting the figures of $30,100, a little more than half way between plaintiff's $17,000 and the plaintiff's $37,000 annual depreciation.

Upon the question of plaintiff's net income, I have adopted the figures for 1918 of one dollar per 1,000 cubic feet for gas sold in the city of Albany. From the item of miscellaneous rents, $948, I have deducted the $20 received for the State street office. I make the total revenue attributable to the city of Albany business, $604,255. I have not included in this amount one-half of the rents for office building. *Supra.*

From manufacturing expenses of $363,242 (Mr. Maltbie's figures) I have deducted $6,751, being the amount of the error made in the calculation of the cost of oil in 1918 attributable to Albany, making the manufacturing expenses $356,491 attributable to Albany only. In the plaintiff's contract with the Prudential Oil Company entered into October 1, 1917, there was a clause with reference to deferred deliveries which amounted under the facts and circumstances to a cancellation of the contract so far as oil deliveries in 1918 were concerned; the Prudential Oil Company up to May 12, 1918, had been cut off from all sources of supply and had been prohibited by the United States fuel administration from shipping gas oil to Albany outside its zone, which restriction lasted until after the termination of said contract.

For transmission and distribution expenses, I have taken eighty-eight per cent of the total expenses attributable to Albany, making the amount $72,940. Both plaintiff and defendants agree as to commercial, general and miscellaneous expenses; also as to uncollected bills. On general amortization, I have adopted the defendants' item of $30,100. I have also credited the plaintiff with the difference of casualty and insurance reserves for 1918, $789, so as to find exactly what the gas operating expenses are. I have also credited the amount charged to the appropria-

tions fund, $3,141; this latter amount was actually expended although charged to surplus and was not credited by the plaintiff in its table of revised gas income.

For taxes I have allowed the plaintiff on real property $13,880, being the amount attributable to Albany after deducting the taxes on the old office building and the Grand street property. I have allowed on gross earnings the sum of $2,087.12, being the amount of Mr. Maltbie's, defendants' expert, calculations of the same, his calculation being in my opinion the correct one. I have also adopted Mr. Maltbie's estimate of the amount of the special franchise tax for Albany only, $38,672.76. As to the Federal income taxes, I hold that this tax is payable by the plaintiff corporation and that it is not a tax assessed against the income of the individual stockholder as claimed by the defendant, Attorney-General Newton. I do not agree with Mr. Maltbie's calculation of the Federal income tax, he having deducted items of interest paid by the plaintiff corporation without there being any proof to show that this interest was paid for money borrowed for gas operating expenses. If it was as a matter of fact, then the operating expenses should be increased by the amount of that interest so paid, for neither the plaintiff's nor the defendants' experts have charged such an item to gas operating expenses; therefore I have used for federal income tax in 1918, the sums set up by plaintiff for taxes paid by the gas department attributable to Albany. For capital stock taxes, I have adopted the figures made by Mr. Whitbeck, plaintiff's expert, he having followed the method directed by the Federal government in determining the amount of the tax. I have allowed no item paid for personal property tax nor for excess dividend taxes, holding that neither of these items are proper in an action of this character. This makes a total of taxes of $64,450.66 or $3,206.66 more than the calcula-

tions of Mr. Maltbie, defendants' expert. This leaves a total of gas operating expenses of $606,794, leaving a deficit for 1918 of $2,539, aside from any return on capital.

The estimate of the gas production expenses and estimated income for 1919, shows that for the first five months of 1919, there would be a deficit of $5,510. A table showing the various items is hereto annexed. For the last half of 1919, the cost of production would be 89.72 cents per 1,000 cubic feet; this includes an estimate of the income taxes to be paid in 1920, on the 1919 earnings of 1.86 cents per 1,000 cubic feet of gas, estimating the consumption at five per cent less than in 1918, said income tax being the amount the Federal government would collect on the sum of $109,-313, at ten per cent, the income tax rate, said sum of $109,313 being the amount calculated at six per cent on the rate base found herein.

I have allowed a period of one year for the determination of the question of whether the plaintiff's property was being confiscated, to wit: the year 1918. I have taken into consideration the earnings for the years prior thereto, and from the fact of the enormous increase of the cost of labor, materials, supplies and taxes, and from which no relief seems to be in sight, it does not seem to me that this plaintiff should be required to consume the savings of these previous years and which were not distributed to stockholders as dividends, although the corporation had a perfect right to do so, and that the plaintiff corporation should be permitted, until such time as the expenses of production shall decline to where they were previous to the year 1918, to receive six per cent in addition to the expenses of production upon the rate base as arrived at herein and as it may be changed by future additions or subtractions, as the case may be, from gas operating expenses in the city of Albany.

' In making these calculations I have made no allow-

ance for the enormous increase in cost for new construction, as I do not believe that that is the proper basis in arriving at the rate base in this action; this is not an exchange price; the plaintiff is not suing to be permitted to sell its property to the highest bidder; it has a monopoly of the gas business in the city of Albany. And the figures I have placed upon its property represent, in my view, the real value thereof for the purposes for which it was constructed at the time of this litigation, realizing, of course, that for all new construction, the gas operating capital will be increased by the amount of the expenses thereof and for which the company should be allowed.

Attached hereto are several tables showing different sums allowed for the various conclusions arrived at herein.

Counsel for the defendants, both for the city and the attorney-general, in their zeal for their clients' cause, have filed requests to find of great magnitude; the attorney for the city making eighty-one requests for findings of fact and for three conclusions of law, comprising about forty-five folios of typewritten matter; and the attorney-general's proposed findings contain one hundred and eighty-nine requests for findings of fact and six proposed conclusions of law, comprising ninety-one folios of typewritten matter. Ruling upon these numerous requests alone required four days' time, and it is posible that in considering this great multiple of requests, there may be found some contradictory findings. However, the court has endeavored to make these findings under the rulings and in accordance with the reasons laid down in this opinion.

Counsel for plaintiff and the defendants may present to the court their views upon the form of the judgment that should be entered in accordance with this opinion, at Cobleskill on any Saturday that may be convenient for the court.

RATE BASE.

GAS OPERATING PROPERTY IN ALBANY.

| | | | |
|---|---|---|---|
| Land: | | | |
|   Site of plant............. | $165,000 00 | | |
|   South of plant........... | 95,348 00 | | |
|   Champlain street ........ | 1,500 00 | | |
| | $261,848 00 | | |
| | | 88% | $230,426 |
| New office building: | | | |
|   Land .................... | $71,551 50 | | |
|   Building ................ | 369,810 75 | | |
| | $441,362 25 | | |

One-half of which is $220,861.12 from which deduct one-half for rents capitalized, or $90,000, leaving $130,681, 88% of which is......................      115,000

| | | | |
|---|---|---|---|
| General equipment: | | | |
|   For new office building not included in suspense account, $2,943.63, one-half of which is............. | $1,471 21 | | |
|   New office furniture, $13,272.51, one-half of which is ..................... | 6,636 26 | | |
| | $8,108 00 | | |
| | | 88% | 7,135 |
| General equipment, gas...... | $29,067 00 | | |
| Deduct accrued depreciation . | 4,796 00 | | |
| | $24,271 00 | | |
| | | 88% | 21,358 |
| Organization expenses....... | $10,000 00 | | |
| | | 88% | 8,800 |
| Working capital............ | $205,000 00 | | |
| | | 88% | 180,400 |
| Interest and taxes during construction ................ | $45,844 00 | | |
| | | 88% | 40,343 |
| Works and station structures .................... | $133,403 00 | | |
| Less depreciation ........... | 45,609 00 | | |
| | | | $87,894 |

| | | |
|---|---:|---:|
| Holders .................... | $204,318 00 | |
| Less depreciation ........... | 31,660 00 | |
| | | $172,658 |
| Furnaces, boilers and accessories .................... | $15,975 00 | |
| Less depreciation ........... | 6,022 00 | |
| | | 9,953 |
| Water gas sets and accessories .................... | $50,405 00 | |
| Less depreciation ........... | 17,642 00 | |
| | | 32,763 |
| Purification apparatus ...... | $41,193 00 | |
| Less depreciation ........... | 8,780 00 | |
| | | 32,413 |
| Accessory equipment at works. | $48,471 00 | |
| Less depreciation ........... | 16,965 00 | |
| | | 31,506 |
| Miscellaneous .............. | $658 00 | |
| Less depreciation ........... | 138 00 | |
| | | 520 |
| Gas tools .................. | $2,871 00 | |
| Less depreciation .......... | 718 00 | |
| | | 2,153 |
| Gas laboratory equipment... | $2,316 00 | |
| Less depreciation ........... | 579 00 | |
| | | 1,737 |
| Total ......................... | | $371,597 |
| Eighty-eight per cent of which is................... | | $327,000 |

### In Albany Only.

| | | |
|---|---:|---:|
| Trunk lines and mains................ | $745,871 00 | |
| Less depreciation..................... | 148,774 00 | |
| | | $595,097 |
| Gas services.......................... | $192,199 00 | |
| Less depreciation .................... | 44,953 00 | |
| | | 147,246 |
| Gas meters........................... | $155,522 00 | |
| Less depreciation .................... | 45,746 00 | |
| | | 109,776 |
| Gas meter installation................ | $43,661 00 | |
| Less depreciation .................... | 4,366 00 | |
| | | 39,295 |
| Total gas operating property in Albany......... | | $1,821,876 |

*Gas Operations Attributable to Albany.*

| | | |
|---|---:|---|
| Sales of gas in the city of Albany...... | $589,758 | 00 |
| Miscellaneous revenue ................ | 13,680 | 00 |
| Miscellaneous rents, $834, less 88% of rent of State street office, $20 or $17.. | 817 | 00 |
| | | $604,255 |

*Gas Operating Expenses.*

| | | |
|---|---:|---|
| Production expenses .................. | $356,491 | 00 |
| Transmission ........................ | 72,940 | 00 |
| Commercial .......................... | 33,329 | 00 |
| General and miscellaneous............. | 43,595 | 00 |
| General amortization.................. | 30,100 | 00 |
| Uncollected bills ..................... | 1,958 | 00 |
| Deficiency, casualty and insurance reserves ........................... | 789 | 00 |
| Taxes: | | |
| Real property taxes................... | 13,880 | 00 |
| Gross earnings taxes.................. | 2,807 | 12 |
| Special franchise taxes............... | 38,672 | 76 |
| Income taxes......................... | 7,715 | 78 |
| Capital stock tax ..................... | 1,375 | 00 |
| Appropriations ...................... | 3,141 | 00 |
| | | 606,794 |
| Deficit ..................................... | | $2,539 |
| Amount required to produce 6% on rate base....... | | $109,313 |
| Rate per 1,000 cubic feet........................... | | $1.20 |

ESTIMATE OF GAS PRODUCTION EXPENSES AND ESTIMATED INCOME FOR FIRST FIVE MONTHS OF 1919 AND LAST HALF OF 1919.

| | Cents per 1,000 cubic ft. |
|---|---:|
| Production expenses, less sales of residuals and by-products ....................... | 61.16 |
| Transmission and distribution............. | 11.89 |
| Commercial expenses .................... | 5.65 |
| General and miscellaneous operating expenses. | 7.40 |
| Uncollected bills ....................... | .33 |
| Taxes (other than income taxes)........... | 10.48 |

|  | Cents per 1,000 cubic ft. |
|---|---|
| Income tax (to be paid in 1920 on 1919 earnings) | 1.86 |
| General amortization | 5.11 |
| Deficiency, casualty and insurance reserves and appropriations | .69 |
|  | 104.57 |
| Less miscellaneous revenues | 2.32 |
|  | 102.25 |

Upon an estimated consumption of gas of five per cent less than in 1918, to wit, 586,960,000 cubic feet, this would leave a deficit for the first five months of 1919 of $5,510 aside from any return on capital.

For the last half of 1919, the only change would be a reduction in the price of gas oil; the price for gas oil in the last half of 1918 was 9.24 cents; the price in 1919 (last half) was 6.1775 cents, a difference of 3.0625 cents per gallon. Multiplying this difference by 4.22, being the number of gallons used per each 1,000 cubic feet of gas, would show a saving of 12.53 cents per 1,000 cubic feet of gas; deducting this from 102.25 would make the cost of production in the last half of 1919, 89.72 cents per 1,000 cubic feet of gas.

The amount required to produce a six per cent return on the rate base of $1,821,876, is $109,313. For the first half of 1919, this would require $54,656 plus $6,612, the deficit for six months, or, a total of $61,268, which, computed on six months' consumption of gas, 293,480,000 cubic feet, would require a price of $1.21 per 1,000 cubic feet and the rate would be the same for five months. For the last half of 1919 would require $54,656 less $30,170, the amount received, leaving a deficit of $24,486 which would require a rate of $1.09 per 1000 cubic feet.

Judgment accordingly.

### Decision.

The above entitled action having been brought on **for** trial at a Trial Term of the Supreme Court, Part II, on March 31, 1919, before Mr. Justice Nichols, without a jury, and the plaintiff appearing by Neile F. Towner, and the defendant by Charles D. Newton appearing by Wilber W. Chambers, deputy attorney-general, and the defendant, city of Albany, appearing by John J. McManus, assistant corporation counsel, and there being no appearances on the part of the other defendants and the allegations and evidence of the parties appearing having been heard and due deliberation having been had, I, the undersigned, do decide and find as follows:

### *Findings of Fact.*

1. That at all the times hereinafter mentioned plaintiff was and now is a domestic gas and electric corporation, incorporated on July 13, 1885, under chapter 37 of the Laws of 1848, for the purpose of manufacturing and supplying gas for lighting streets and public and private buildings in the city of Albany, and has its principal place of business in the city of Albany and state of New York.

2. That the defendant, the public service commission, second district, was created and exists by and under an act of the legislature, known as the Public Service Commissions Law and acts amendatory thereof and supplemental thereto, and has its principal office in the city of Albany, state of New York. That the defendant, the city of Albany, is a domestic municipal corporation, and is situate wholly in the county of Albany, state of New York. That the defendant, Charles D. Newton, is the successor of Merton E. Lewis, and is the duly elected and qualified attorney-general of the state of New York. That the defendant, Timothy E. Roland, is the successor of Harold D. Alexander, and is the duly elected and quali-

fied district attorney of the county of Albany. That the defendant, the city of Albany, is a proper party defendant as custodian and guardian of the collective rights of the inhabitants of said city who are consumers of gas.

3. That plaintiff, shortly after its incorporation, acquired the franchises of the Albany Gas Light Company, incorporated under a special act of the legislature, viz.: chapter 74 of the Laws of 1841. That plaintiff also received certain franchises, rights and permissions under an ordinance of the common council of the city of Albany, passed September 15, 1885, to lay mains and services for the purpose of conducting gas through streets and public places in the city of Albany. That plaintiff has also duly acquired other franchises and rights.

4. That none of the franchises, rights, permissions, consents or contracts granted to or made with plaintiff by the state of New York, or by local authorities, contain any limitation whatsoever in the price that plaintiff may charge for gas manufactured and sold in the city of Albany or elsewhere, except that the original permission given by the city of Albany to plaintiff contained the condition that the cost of gas should not exceed two dollars per 1,000 cubic feet, except that should the price of labor and materials used in the manufacture of gas increase thirty-three per cent the cost of gas should not exceed the sum of two dollars and fifty cents per 1,000 cubic feet.

5. That since the organization of plaintiff in 1885 as aforesaid, plaintiff, under said franchises, rights, permissions and consents, has continuously sold and is now selling gas to consumers in the city of Albany, N. Y.

6. That on April 26, 1907, chapter 227 of the Laws of that year was enacted which fixed the maximum price that plaintiff might charge for gas manufactured

and distributed in the city of Albany at one dollar per 1,000 cubic feet.

7. That from April 26, 1907, to September 26, 1918, the price charged for illuminating gas manufactured and distributed by plaintiff in the city of Albany for all consumers, other than wholesale consumers, was one dollar per 1,000 cubic feet, and no price was charged in excess of that amount.

8. That notwithstanding said chapter 227 of the Laws of 1907 on May 6, 1918, plaintiff applied to the defendant public service commission, second district, for an order authorizing plaintiff to charge for the gas in the city of Albany the maximum price of one dollar and thirty cents per 1,000 cubic feet.

9. That after due notice, and on May 14, 1918, a hearing was held upon said application by the defendant public service commission, second district, in which the defendant the city of Albany appeared by counsel and filed objections, and the defendant public service commission, second district, being of the opinion that the legislature had withheld from it the right to increase the rate chargeable by the plaintiff above one dollar per 1,000 cubic feet prescribed by chapter 227 of the Laws of 1907, ordered that the petition of plaintiff be " dismissed and discontinued because of lack of power to afford the only relief asked for."

10. That thereafter plaintiff applied to defendant public service commission, second district, for a rehearing, which application was denied by defendant public service commission, second district, and upon the application of plaintiff a writ of certiorari was issued out of the Supreme Court to review the determination of said defendant public service commission, second district. That said writ of certiorari was heard before the Appellate Division, third judicial department, which by a divided court affirmed the determination of the defendant public service commis-

sion, second district. That an appeal was taken from said order, of affirmance made by the Appellate Division, third judical department, to the Court of Appeals, and said order, after a hearing, was affirmed by the Court of Appeals, it being stated in the opinion of said Court of Appeals, written by Mr. Judge Collin, to which reference is hereby made as though the same was set forth in full herein, that because the public service commission had not the power to afford the plaintiff here the desired relief under the allegations and prayer of the petition it did not err in dismissing the petition, but that the brief and arguments of counsel disclosed that the company, the plaintiff here, knew that it was not remediless.

11. That on August 14, 1918, plaintiff filed with the defendant public service commission, second district, a schedule of rates which it proposed to charge in the city of Albany, to become effective on September 26, 1918, viz.:

First 25,000 cubic feet per month $1.30 per 1,000 cubic feet.

Next 25,000 cubic feet per month $1.20 per 1,000 cubic feet.

Excess cubic feet per month $1.05 per 1,000 cubic feet.

12. That the defendant public service commission, second district, refused to file said schedule of rates, and notified plaintiff that said proposed rates were in violation of chapter 227 of the Laws of 1907, being in excess of the rate fixed by said act, and returned said schedule of rates to plaintiff. That notwithstanding said action on the part of the defendant public service commission, second district, the plaintiff being still of the opinion that it might lawfully increase its rates in excess of the rate prescribed by chapter 227 of the Laws of 1907, proposed on Septem-

ber 26, 1918, to put into effect the rates set forth in the finding of fact No. 11.

13. That at the time of the commencement of this action plaintiff moved for an injunction order during the pendency of the action, and an order was duly made and entered in the office of the clerk of the county of Albany on September 13, 1918, granting an injunction during the pendency of the action. That an appeal was taken by certain of the defendants from said order, to the Appellate Division, third judicial department, and the order granting a temporary injunction was reversed, and the motion for a temporary injunction denied.

14. That between September 26, 1918, and November 14, 1918, plaintiff charged in the city of Albany, to its consumers, the rates set forth in finding of fact numbered 11. That after November 14, 1918, and until February 1, 1919, plaintiff charged the one dollar rate to its consumers in the city of Albany. That on February 1, 1919, plaintiff again moved this court, at Special Term, for an injunction during the pendency of this action, and said order was duly granted. That after said order was granted at the Special Term, held on February 1, 1919, from February 1, 1919, to June 20, 1919, plaintiff charged its consumers in the city of Albany the rates set forth in finding of fact numbered 11.

15. That on June 20, 1919, plaintiff voluntarily reduced its price to consumers in the city of Albany to a maximum rate of $1.15 per 1,000 cubic feet, which has been the rate in force since that date.

16. That the plaintiff, aside from producing and distributing gas, is also engaged in the business of producing and distributing electricity.

17. That the division made by the plaintiff of the salaries of general officers, office help, clerical force and statement takers working upon both branches, general office expenses and expenses of general office

building between the gas and electric departments was proper.

18. That the gas business of the plaintiff is conducted in the city of Albany and in the city of Watervliet and some adjacent rural territory.

19. That as between the gas business in the city of Albany and outside the city of Albany, eighty-eight per cent is a fair and proper allocation to the city of Albany and twelve per cent outside the city of Albany for all expenses which cover both the city of Albany and outside the city of Albany.

20. That the same percentage is a fair and proper allocation of the property in the city of Albany and outside of the city of Albany of such property as is used by plaintiff in its gas business both in the city of Albany and outside of the city of Albany.

21. That the fair value of the property of the plaintiff used and required in the manufacture and distribution of gas allocated to the city of Albany as of December 31, 1918, and since that date, on which it is entitled to have a fair return computed, is at least the sum of $1,821,876.

22. That the properties which make up said valuation are itemized as follows:

GAS OPERATING PROPERTY IN ALBANY.

Land:

| | | | |
|---|---|---|---|
| Site of plant............ | $165,000 00 | | |
| South of plant........... | 95,348 00 | | |
| Champlain street ........ | 1,500 00 | | |
| | $261,848 00 | 88% | $230,426 |

New office building:

| | | |
|---|---|---|
| Land .................... | $71,551 50 | |
| Building ................ | 369,810 75 | |
| | $441,362 25 | |

One-half of which is $220,861.12, from which deduct one-half for rents capitalized, or $90,000, leaving $130,681, 88% of which is.................... 115,000

General equipment:

| | | | |
|---|---:|---:|---:|
| For new office building not included in suspense account, $2,943.63, one-half of which is............ | $1,471 00 | | |
| New office furniture, $13,-272.51, one-half of which is .................... | 6,636 00 | | |
| | $8,108 00 | 88% | 7,135 |
| General equipment, gas..... | $29,067 00 | | |
| Deduct accrued depreciation. | 4,796 00 | | |
| | $24,271 00 | 88% | 21,358 |
| Organization expenses ...... | $10,000 00 | 88% | 8,800 |
| Working capital .......... | 205,000 | 88% | 180,400 |
| Interest and taxes during construction ............. | $45,844 00 | 88% | 40,343 |
| Works and station structures ................... | $133,403 00 | | |
| Less depreciation .......... | 45,609 00 | | |
| | | $87,894 | |
| Holders ................... | $204,318 00 | | |
| Less depreciation ......... | 31,660 00 | | |
| | | 172,658 | |
| Furnaces, boilers and accessories . ................. | $15,975 00 | | |
| Less depreciation .......... | 6,022 00 | | |
| | | 9,953 | |
| Water gas sets and accessories ................ | $50,405 00 | | |
| Less depreciation .......... | 17,642 00 | | |
| | | 32,763 | |
| Purification apparatus ..... | $41,193 00 | | |
| Less depreciation .......... | 8,780 00 | | |
| | | 32,413 | |
| Accessory equipment at works | $48,471 00 | | |
| Less depreciation .......... | 16,965 00 | | |
| | | 31,506 | |

| | | | |
|---|---|---|---|
| Miscellaneous . ............ | $658 00 | | |
| Less depreciation .......... | 138 00 | | |
| | | $520 | |
| Gas tools ................. | $2,871 00 | | |
| Less depreciation .......... | 718 00 | | |
| | | 2,153 | |
| Gas laboratory equipment... | $2,316 00 | | |
| Less depreciation .......... | 579 00 | | |
| | | 1,737 | |
| Total ..................... | | $371,597 | |
| Eighty-eight per cent of which is.................. | | | $327,000 |

### In Albany Only.

| | | | |
|---|---|---|---|
| Trunk lines and mains................ | $743,871 | | |
| Less depreciation .................... | 148,774 | | |
| | | $595,097 | |
| Gas services ........................ | $192,199 | | |
| Less depreciation ................... | 44,953 | | |
| | | 147,246 | |
| Gas meters ........................ | $155,522 | | |
| Less depreciation ................... | 45,746 | | |
| | | 109,776 | |
| Gas meter installation ............... | $43,661 | | |
| Less depreciation ................... | 4,366 | | |
| | | 39,295 | |
| Total gas operating property in Albany........ | | $1,821,876 | |

23. That in making these calculations to arrive at the rate base in this action no allowance has been made for the enormous increase in cost for new construction and such values have been calculated on the basis of pre-war prices except in cases of property actually constructed during the war period.

24. That the present values of all of the tangible property of plaintiff based on war values would be from fifty per cent to one hundred per cent higher than the pre-war values hereinbefore set forth in the finding of fact numbered 22.

25. That the land south of the plant is properly an

item to be charged as gas operating capital, that it was not bought for an investment nor for speculative purposes, but for the purpose of an auxiliary coal gas plant and it was the part of wisdom, if the coal gas auxiliary was to be built, to acquire this land before acquired by another manufacturing concern, this being the only land near the plant that is available for large manufacturing operations.

26. That the new office building, with its attractive show rooms for the sale of gas appliances, which increase the sales of gas, and thereby decrease the overhead charges, was a good business venture on the part of the plaintiff, and the sums mentioned in the foregoing findings, including the value of the furniture, are properly an item to be charged to gas operating capital.

27. That there is practically no depreciation due to wear and tear in the cost of cast iron gas mains laid by the plaintiff in the city of Albany.

28. That the retirement and additions to plaintiff's fixed gas capital during the year 1918 as shown by plaintiff's books of account are as follows:

Additions, $30,143.01; retirements, $4,520.72.

29. That the public service commission, second district, on July 3, 1913, made a final order in a proceeding instituted by the plaintiff to issue certain stocks and notes for the purpose of reimbursement of the treasury of amounts expended out of income and to refund certain bonds.

30. That said defendant public service commission, second district, in said proceedings made an investigation of the original cost or investment value of the plaintiff's property invested in the gas business as of December 31, 1911.

31. That as a result of said investigation, said defendant public service commission, second district, in said proceeding permitted the plaintiff to issue bonds and stocks to the amount set forth in said order.

32. That prior to the granting of said order by the defendant public service commission, second district, the plaintiff's books were rewritten from original vouchers, and that since said date plaintiff's books of account have been kept in accordance with the uniform system of accounts prescribed by the defendant public service commission, second district.

33. That the sales of gas by plaintiff in the city of Albany during the year 1918 amounted to 589,758,000 cubic feet.

34. That the total revenues to plaintiff from the sales of gas in the city of Albany during the year 1918 at the rate of $1 per 1,000 cubic feet amounted to $589,758.

35. That the total revenue to plaintiff during the year 1918 attributable to the city of Albany in its gas business for miscellaneous revenues and miscellaneous rents amounted to $14,497.

36. That the total production expenses of plaintiff in its gas business during the year 1918 attributable to the city of Albany amounted to $356,491.

37. That the total transmission expenses of plaintiff in its gas business during the year 1918 attributable to the city of Albany amounted to $72,940.

38. That the total commercial expenses of plaintiff in its gas business during the year 1918 attributable to the city of Albany amounted to $33,329.

39. That the total general and miscellaneous expenses of plaintiff in its gas business, without amortization, during the year 1918 attributable to the city of Albany, amounted to $43,595.

40. That the total general amortization of plaintiff in its gas business during the year 1918 attributable to the city of Albany amounted to $30,100.

41. That the total uncollected gas bills of plaintiff in its gas business during the year 1918 attributable to the city of Albany amounted to $1,958.

42. That the total deficiency of casualty and insur-

ance reserve of plaintiff in its gas business during the year 1918 attributable to the city of Albany amounted to $789.

43. That the total appropriation expenses of plaintiff in its gas business during the year 1918 attributable to the city of Albany amounted to $3,141.

44. That the total taxes of plaintiff in its gas business during the year 1918 attributable to the city of Albany amounted to $64,450.66, itemized as follows:

| | | |
|---|---:|---:|
| Real property taxes | $13,880 | 00 |
| Gross earnings taxes | 2,807 | 12 |
| Special franchise taxes | 38,672 | 76 |
| Income taxes | 7,715 | 78 |
| Capital stock tax | 1,375 | 00 |
| | $64,450 | 66 |

45. That during the year 1918 at the rate of $1.00 per 1,000 cubic feet for gas sold by the plaintiff to its consumers in the city of Albany, which price was fixed by chapter 227 of the Laws of 1907, the gas operating expenses (including taxes), attributable to the city of Albany exceeded all revenues from plaintiff's gas business attributable to the city of Albany by the sum of $2,539.

46. That during the year 1918 at the rate of $1 per 1,000 cubic feet for gas sold by plaintiff to its consumers in the city of Albany, which price was fixed by chapter 227 of the Laws of 1907, there was no return to plaintiff upon the fair value of its property invested in its gas business in the city of Albany.

47. That during the year 1918, the rate of one dollar per 1,000 cubic feet for gas sold by plaintiff to its consumers in the city of Albany, which price was fixed by chapter 227 of the Laws of 1907, was insufficient to yield any return to plaintiff upon the fair value of its property invested in its gas business in the city of Albany.

48. That during the year 1919 at the rate of one dollar per 1,000 cubic feet for gas sold by plaintiff to its consumers in the city of Albany, which price was fixed by chapter 227 of the Laws of 1907, the chances are that the return to plaintiff upon the fair value of its property invested in its gas business in the city of Albany will be insufficient to yield a return that is not confiscatory.

49. That for the years immediately following 1919 based on present indications of the future and the upward trend of prices, at the rate of one dollar per 1,000 cubic feet for gas sold by plaintiff to its consumers in the city of Albany, which price was fixed by chapter 227 of the Laws of 1907, the chances are that the return to plaintiff upon the value of its property invested in its gas business in the city of Albany will be insufficient to yield a return that is not confiscatory.

50. That one year, namely, the year 1918, is a sufficient period of time for the determination of the question whether the property of the plaintiff was being confiscated.

51. That allowing a period of one year for the determination of the question whether plaintiff's property was being confiscated, consideration is taken of the earnings for the years prior thereto, and from the fact of the enormous increase of the cost of labor, materials, supplies and taxes, from which no relief seems to be in sight.

52. That the plaintiff should not be required to consume the savings of years previous to the year 1918, which were not distributed to its stockholders as dividends, although plaintiff had a perfect right so to do, in order to make up the deficit of the year 1918 and following years.

53. That since January 1, 1918, the rate of one dollar per 1,000 cubic feet for gas sold by plaintiff to its consumers in the city of Albany, which price was fixed

by chapter 227 of the Laws of 1907, has been confiscatory as to the plaintiff.

54. That the chances are that the rate of one dollar per 1,000 cubic feet for gas sold by plaintiff to its consumers in the city of Albany, which price was fixed by chapter 227 of the Laws of 1907, will be confiscatory as to the plaintiff in the future.

55. That until such time as gas sold at the rate of one dollar per 1,000 cubic feet in the city of Albany would net plaintiff six per cent on the rate base of $1,821,876, changed by future additions and subtractions as the case may be, in addition to all expenses of operation (including taxes) attributable to the city of Albany, the rate of one dollar per 1,000 cubic feet, which price was fixed by chapter 227 of the Laws of 1907, is confiscatory as to plaintiff.

56. That in order to net a return to plaintiff of six per cent on the rate base as fixed by the court during the year 1918, the plaintiff was required to charge for gas sold in the city of Albany one dollar and twenty cents per 1,000 cubic feet.

57. That in order to net a return to plaintiff of six per cent on the rate base as fixed by the court during the year 1919 it is estimated that plaintiff was required to charge for gas sold in the city of Albany one dollar and fifteen cents per 1,000 cubic feet.

58. That in order to net a return to plaintiff of six per cent on the rate base as fixed by the court during the first half of the year 1919, it is estimated that the plaintiff was required to charge for gas sold in the city of Albany one dollar and twenty-one cents per 1,000 cubic feet.

59. That in order to net a return to plaintiff of six per cent on the rate base as fixed by the court during the last half of the year 1919, it is estimated that the plaintiff was required to charge for gas sold in the city of Albany one dollar and nine cents per 1,000 cubic feet.

60. That in all estimates for the year 1919, no amount is included in the operating expenses for the expenses of this action.

61. That during the last half of the year 1918, and the first five months of the year 1919, the average price for gas oil, reasonably and necessarily paid by the plaintiff, was 9.24 cents per gallon.

62. That during the last half of the year 1919, it is estimated that the average price for gas oil reasonably and necessarily paid by plaintiff, will be 6.1775 cents per gallon.

63. That the amount of gas unaccounted for by plaintiff in the city of Albany was reasonable.

64. That it would be a practical impossibility for plaintiff to collect from its consumers of gas in the city of Albany during the greater part of the year 1918, and the fore part of the year 1919, when plaintiff charged and collected a maximum rate of one dollar per 1,000 cubic feet, any amounts in excess of said one dollar rate paid by consumers.

65. That under the statute in force from June 27, 1907, to January 1, 1917, the minimum illuminating power for carburetted water gas, produced by plaintiff, was twenty candles.

66. That during this period plaintiff substantially complied with the requirements of the statute in force with reference to the candle power and other requirements.

67. That even had plaintiff failed to comply with said statute with reference to the minimum candle power prescribed prior to January 1, 1917, such failure would have no bearing on the merits of this case by reason of remoteness.

68. That the defendant public service commission, second district, under the power conferred by subdivision 3, section 66 of the Public Service Commissions Law, as amended by section 2 of chapter 504 of the Laws of 1913, by an order effective January 1, 1917,

changed the standard of measuring gas from the candle power test to one of heating power.

69. That since 1917 plaintiff, except on a few occasions, has absolutely complied with the order of the public service commission, second district, in regard to the heating test of gas manufactured by plaintiff and at all times has substantially complied with said order.

70. That on the few occasions when plaintiff failed to comply absolutely with said order of the public service commission, second district, oil conditions were desperate, and such failure on plaintiff's part was excusable.

71. That the defendant, public service commission, second district, under section 74 of the Public Service Commissions Law, if satisfied that its said order was not being properly complied with by plaintiff could have commenced an action against the plaintiff to have such violation stopped and prevented.

72. That the defendant public service commission, second district, recognized the fact that under the circumstances in the case on the few occasions mentioned the plaintiff had substantially complied with the provisions of its said order, and that if said defendant public service commission, second district, regarded the acts of the plaintiff as a violation of its said order, by its conduct in not stopping and preventing such violation, the said defendant public service commission, second district, waived the requirements of said order.

73. That the use of more oil in the manufacture of its gas by plaintiff in order to maintain absolutely on said few occasions the heating test required by said order, would have resulted in a greater confiscation of plaintiff's property.

74. That in plaintiff's contract with the Prudential Oil Company, entered into October 1, 1917, there was a clause with reference to deferred deliveries of oil

which amounted, under the facts and circumstances, to a cancellation of the contract so far as oil deliveries in 1918 were concerned.

75. That the Prudential Oil Company, from January, 1918, up to May 12, 1918, had been cut off from all usual sources of supply of oil and from about that date was prohibited by the United States fuel administration from shipping gas oil to Albany, which was outside its zone.

76. That such restriction made by the United States fuel administration lasted until after the termination of said contract with the plaintiff and had the effect of cancelling the contract for deliveries of oil to the plaintiff by said Prudential Oil Company.

77. That the plaintiff conducted its gas operations in an efficient, economical and skillful manner.

78. That the plaintiff's property, used in its gas business, was kept in a high state of efficiency for the economical production and distribution of gas.

*Conclusions of Law.*

1. That chapter 227 of the Laws of 1907 as far as it fixes the maximum rate of one dollar per 1,000 cubic feet for gas manufactured, furnished or sold by plaintiff to its consumers in the city of Albany, is confiscatory as to the plaintiff.

2. That since January 1, 1918, said chapter 227 of the Laws of 1907 is unconstitutional and void as to plaintiff in that it has operated and now operates to deprive the plaintiff of its property without due process of law and in violation of the Constitution of the state of New York and of the fourteenth amendment of the Constitution of the United States.

3. That plaintiff is entitled to a judgment restraining the defendants and each of them, their and each of their attorneys, agents, servants, employees, or successors in office, from in any way enforcing or at-

tempting to enforce as against the plaintiff, any of the penalties or forfeitures under the provisions of chapter 227 of the Laws of 1907, or of the Public Service Commissions Law, or any other statute with reference to the manufacture, furnishing or sale by plaintiff in the city of Albany, of gas at a higher rate than one dollar per 1,000 cubic feet, or in any wise interfering with plaintiff or its property or its business by the commencement of any action, or proceeding which would prevent or tend to prevent plaintiff from making a sale of gas in the city of Albany, in excess of one dollar per 1,000 cubic feet.

4. That plaintiff may retain and hold any sums received and collected by it or due or to become due in excess of one dollar per 1,000 cubic feet for gas manufactured, furnished or sold by plaintiff to its consumers in the city of Albany, since September 26, 1918.

5. That as long as plaintiff under the judgment to be entered herein is allowed to charge in excess of one dollar per 1,000 cubic feet for gas sold to its consumers in the city of Albany, plaintiff may charge a rate which will yield not to exceed six per cent per annum on said rate base as found herein, namely, $1,821,876 changed by future additions and substractions as the case may be.

6. That the judgment to be entered hereon shall provide that the defendants, or any of them, or their successors in office, may apply to this court to reinstate the suspended rate fixed by chapter 227 of the Laws of 1907 upon proof that said rate for the period of one year is adequate to yield a return not confiscatory.

7. That a judgment may be entered in conformity with the foregoing decision.

CHARLES E. NICHOLS,
*Justice of Supreme Court.*